## CHARLES SPENCER, JOHN A. REICHERT, AND JOHN R. JARBOE v. E. H. PRINDLE.

LEGAL TENDER NOTES AND COIN.—In an action to recover the value of services rendered, when no price has been agreed upon by the parties, if the jury adopt Treasury notes, made by Act of Congress a legal tender in the payment of debts, as the standard of value, the verdict will not be set aside on that ground.

APPEAL from the District Court, Fourth Judicial District, City and County of San Francisco.

Defendant appealed from the judgment and from the order denying a new trial.

The other facts are stated in the opinion of the Court.

*A. M. Heslep*, for Appellant.

*Seldon S. Wright*, for Respondents.

By the Court, SAWYER, J.

The plaintiffs—being attorneys at law—sued Prindle for professional services. The services were admitted on the trial, and the only issue was as to their value. William H. Patterson, an attorney, having been asked the general question, as to the reasonable value of the services of plaintiffs, without any reference in the question to any particular kind of money to be taken as the standard of value, answered, "that the ser-

vices were worth one thousand dollars in greenbacks, or five hundred dollars in coin." The other witnesses all made similar answers to similar questions. No objection being taken in any form to any portion of the testimony.

On this testimony the defendant asked the Court to give to the jury the following instruction:

"The jury, in assessing the damages, are not at liberty to take into consideration the difference in value of the currency of the country, but will find a verdict without reference thereto."

The Court refused to give the instruction, as asked, but did give it with the following addition, "except so far as testified to by witnesses and admittted to go to you as testimony in the case." Defendant excepted to the refusal and modification. A verdict was returned in favor of plaintiff for the sum of eight hundred and eighty-nine dollars and twenty-five cents, the amount claimed in the complaint. No particular kind of money was specified in the verdict, or judgment. The ruling of the Court upon the foregoing charge is the error relied on, on the motion for new trial, and on appeal.

The term, "greenback," as used in the testimony, is of course, intended to designate treasury notes of the United States, made by Act of Congress a legal tender in payment of debts; and the term, "coin," to signify the coin of the United States, also made a legal tender. The plaintiff's instruction assumes, that, in legal contemplation, a dollar in one of these kinds of money is equivalent to a dollar in the other—that a dollar in gold is of no more value than a dollar in "greenbacks," and a dollar in "greenbacks" of no less value than a dollar in gold. Conceding this to be so, the most that the defendant can complain of is, that the jury found the value of the services in greenbacks. But this value is, upon the hypothesis assumed, equal to the same number of dollars in gold. The defendants, therefore, could not have been injured.

But conceding, that, while in legal contemplation there is no difference in value between the different kinds of lawful

money, there is a difference, in fact, recognized in the commercial world, and in the ordinary business transactions of the country; how will it affect the question under consideration? We then have two kinds of lawful money, both a legal tender in payment of all debts, within the meaning of the term debts, as used in the various Acts of Congress upon the subject, and, therefore, in legal contemplation, of equal value, but, in fact, recognized in all commercial and business transactions as having different values. All business transactions between man and man would ordinarily be made with reference to this difference in value. If a contract is made, as for instance for a sale of goods, or for services to be performed, for a stipulated price, without naming any particular kind of money in which it is to be paid, the party to make the payment may, at his option pay it in any kind of money made a legal tender that suits his interest, convenience or caprice, and the other party must receive that or none. The presumption is, that the contract is made and the price fixed with reference to this right of the debtor. If the party who is to make the payment fails to meet his engagements, the other party may bring his suit to enforce the payment. In this case there are so many dollars due according to the sum stipulated. On the trial the Court can only ascertain the number of dollars due by the terms of the agreement, and render judgment for the amount, and there can be no inquiry as to whether a dollar of one kind is equivalent to a dollar of another. And the same would, doubtless, be true in case of a contract to pay in any specific kind of money. For the inquiry in such a case would be reduced to a comparison of values between two or more dollars of different kinds of money, which in contemplation of law are of equal value.

But in a contract for goods sold, or for services performed, without any stipulated price, a promise is implied to pay what they are reasonably worth. When this question comes to be litigated, the question is, not whether a dollar in greenbacks is worth more or less than a dollar in gold, but what are the goods, or services worth? The dollar is to be the unit of

value, but the Court can no more say that the value of a gold dollar in the commercial world shall be taken as the standard of value, than that the value of a " greenback " dollar shall be the standard. The Court cannot say in which kind the payment shall be made—that is left to the option of the debtor; and for the same reason, it cannot say that the money of the greater value shall be taken as the measure of value. The debtor may pay whichever he chooses—and when there is any considerable difference in the value, it may safely be presumed that he will pay in that which will be most conducive to his interest; and that would of course be the kind which is of the least value. If he does not do so, it is simply because he does not choose to do it. He has the option if he chooses to exercise it. "Greenbacks" are lawful money—they are a legal tender for all debts—and are therefore necessarily a legal standard for the measurement of values—not of other lawful money, but of all commodities bought and sold, services rendered, etc. In all States of the Union—unless California is an exception—they actually are the standard by which values are estimated in legal investigations, as well as in business transactions. There must be some standard by which values must be determined. And we see no reason, why that kind of money may not be taken, which the law makes a standard, and which must be accepted in satisfaction of the judgment in case it should be tendered by the judgment debtor, whether the creditor is willing or not. If paid in that kind of money, the debtor pays no more than he ought—no more than the actual value of the property purchased, measured by a lawful standard; and if he does not so pay it, he can blame no one but himself. In this case, had the instruction been given as asked, there would have been, in view of the evidence, no standard of value by which the jury could have been guided. For the testimony introduced without objection—as it necessarily, either tacitly or avowedly, must have done—all referred the value of the services either to coin or "greenbacks," and there would have been at least no greater propriety in taking coin as the measure than greenbacks. The instruction, as

modified and given, does not submit any very distinct proposition to the jury; but the jurors were substantially told that they were to determine the value of the services upon the evidence before them. The instruction, if it meant anything, amounted to this. The worst view the jury could have taken for defendant, under the instruction, was to take "greenbacks" as the standard of value; and this, as we have seen, is a recognized legal standard. Admitting that they did so, the defendant could at once have paid the judgment in "greenbacks"—the standard by which the value was measured—and by so doing he would have paid no more than the actual value of the services. He was therefore not injured by the instruction as modified, or by the refusal of the instruction as asked.

We think the order denying a new trial should be affirmed. And it is so ordered.

Mr. Justice CURREY delivered the following dissenting opinion, in which Mr. Justice RHODES concurred:

The Court instructed the jury as follows: "The jury in assessing the damages are not at liberty to take into consideration the difference in the value of the currency of the country, but will find a verdict without reference thereto except so far as testified to by witnesses and admitted to go to you as testimony in the case."

This instruction assumes that at the time of the trial there was a difference in the value of the several kinds of money of the country; and the instruction is in effect that the jury could take into consideration the difference as far as and to the extent specified or indicated by the witnesses in their testimony. The testimony of several witnesses was given which was in exact agreement, and was in substance that the services for which the action was brought were, if estimated in United States notes, made lawful money and a legal tender in the payment of debts by Act of Congress, of the value of one thousand dollars; or, if estimated in gold coin of the United States, of the value of five hundred dollars. Thus the instruction was

that the jury could consider and determine that one of the kinds of money mentioned was worth just double the other, and that they could, according to such estimate and determination, render their verdict.

We are of the opinion the instruction was erroneous and that the judgment should be reversed.